UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| TALES IP, LLC | CIVIL ACTION |
| VERSUS | No.: 19-11339 |
| COMMON-CAMP, LLC | SECTION: "J"(4) |

## ORDER & REASONS

Before the Court is a *Motion for Partial Judgment on the Pleadings* **(Rec. Doc. 16)** filed by Defendant and Plaintiff-in-Counterclaim, Common-Camp, LLC ("Common Camp"), an opposition thereto by Plaintiff and Defendant-in-Counterclaim, Tales IP, LLC ("Tales") (Rec. Doc. 25), and a reply by Common-Camp (Rec. Doc. 29). Having considered the motion and memoranda, the record, and the applicable law, the Court finds that Common-Camp's Motion should be **DENIED**.

## FACTS AND PROCEDURAL BACKGROUND

This litigation arises out of a lease dispute between Tales, as lessee, and Common-Camp, as lessor, for the property at 129-133 Camp Street, New Orleans, Louisiana (the "Property").[1] Beginning in 2009, the Property housed a restaurant named Le Foret. In January 2016, Common-Camp and Le Foret, LLC leased the Property to BRG La Provence, LLC.[2] Effective January 1, 2019, Tales assumed the lease under an amended lease.

---

[1] As Defendant has moved for judgment on the pleadings, all facts herein are taken from Plaintiff's pleadings and accepted as true. *See Jebaco, Inc. v. Harrah's Operating Co.*, 587 F.3d 314, 318 (5th Cir. 2009).

[2] Neither Le Foret, LLC nor BRG La Provence, LLC are parties to this litigation.

The lease provides that the Property would be used "as a restaurant and as a catering or event space that serves food and alcoholic beverages."[3] The amended lease acknowledged that Tales would renovate the first floor to convert that area from a restaurant into a bar, and Tales and Common-Camp agreed to "work together in good faith to ensure that the renovations to the premises are mutually acceptable."[4] The lease also provides that Tales would assume responsibility for obtaining all permits necessary to operate its business, and that Common-Camp would "cooperate and assist in obtaining permits as needed."[5]

In the process of renovating the first floor, Tales discovered several permitting and construction issues that prevented the Property from being used as a restaurant or event space and that should have prevented its use as such in the past. Further, the condition of the Property had been misrepresented to state officials for permitting purposes; Tales provides evidence that the Property was represented to be a one-story building in applications to the State Fire Marshal, even though it actually has four stories. Tales contends that Common-Camp knew of these issues and deliberately failed to disclose them.

Tales notified Common-Camp of these issues, but Common-Camp refused to discuss these issues in detail or to discuss a resolution that would bring Common-Camp in compliance with its obligations under the lease. Instead, on May 31, 2019,

---

[3] (Rec. Doc. 1-2, at 10).
[4] (Rec. Doc. 1-2, at 20).
[5] (Rec. Doc. 1-2, at 10).

Common-Camp sent Tales a five-day notice to vacate and threatened to initiate eviction proceedings if it refused to do so.

Tales filed suit in Orleans Parish Civil District Court on June 6, 2019, seeking a declaratory judgment that it was entitled to diminution or abatement of the rent as well as damages resulting from the condition of the leased premises. It also sought leave to deposit rents for April, May, and June 2019 into the registry of the court, as well as future monthly rents when due, which the court granted on June 10, 2019.[6]

Common-Camp removed the case to this Court on June 24, 2019,[7] and subsequently filed an answer and counterclaims against Tales and Gary Solomon, Sr., Tales's guarantor under the lease, seeking past-due rent, holdover rent, late fees, attorney's fees, and to evict Tales from the Property.[8] Common-Camp then filed the instant motion.

## **LEGAL STANDARD**

Rule 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." FED. R. CIV. P. 12(c). A motion brought pursuant to Rule 12(c) "is designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts." *Hebert Abstract Co. v. Touchstone Props., Ltd.*, 914 F.2d 74, 76 (5th Cir. 1990). The Court must accept the facts in the pleadings as true and view them in the light most

---

[6] (Rec. Doc. 1-3, at 9).
[7] (Rec. Doc. 1).
[8] (Rec. Doc. 4).

3

favorable to the non-moving party. *Jebaco, Inc. v. Harrah's Operating Co.*, 587 F.3d 314, 318 (5th Cir. 2009).

## DISCUSSION

Common-Camp has moved for judgment on the pleadings for its counterclaims against Tales. In its opposition, Tales does not address the merits of Common-Camp's counterclaims but insists that Common-Camp is liable to Tales for its failure to deliver the Property in a condition suitable for its intended purpose.

Article 1993 of the Louisiana Civil Code provides: "In the case of reciprocal obligations, the obligor of one may not be put in default unless the obligor of the other has performed or is ready to perform his own obligation." LA. CIV. CODE art. 1993. A lessor is obligated to deliver the property subject to the lease "in good condition suitable for the purpose for which it was leased," LA. CIV. CODE art. 2684, and warrants "that the thing is suitable for the purpose for which it was leased and that it is free of vices or defects that prevent its use for that purpose," LA. CIV. CODE art. 2696. While this warranty may be waived, such a waiver is not effective if not done "by clear and unambiguous language that is brought to the attention of the lessee" or if "it pertains to vices or defects of which the lessee did not know and the lessor knew or should have known." LA. CIV. CODE art. 2699.

The lease provides that the Property and all improvements thereon "are accepted by LESSEE in their present condition, except for such repairs and improvements as are written into this Lease."[9] The lease also provides that Common-

---

[9] (Rec. Doc. 1-2, at 10).

4

Camp "shall not be liable for any latent defect in the leased premises or in the building of which they form a part."[10] This language is in the same size and font as the rest of the lease, and nothing about these provisions make them stand out from surrounding provisions; rather, each are contained in the middle of their respective paragraphs. *Cf. Conmaco/Rector L.P v. L&A Contracting Co.*, No. 12-2337, 2013 WL 5881576, at *3-5 (E.D. La. Oct. 30, 2013) (finding waiver sufficiently brought to lessee's attention where waiver was contained in its own paragraph and concluded with statement in bold that lessee acknowledged waiver had been brought to its attention, and lessee had initialed every page). Tales did not initial every page of the lease.[11] *Cf. id.* Thus, as Tales contends, there is no evidence that the waiver was sufficiently brought to its attention. Viewing the facts in the light most favorable to Tales, the Court finds that the waiver is ineffective. *See* LA. CIV. CODE art. 2699.

The Court also finds that Common-Camp breached its obligation to deliver the premises in a condition suitable for its intended use and the warranty against vices and defects. *See* LA. CIV. CODE arts. 2684, 2696. Common-Camp acknowledges that none of this is contested for purposes of the instant motion but argues that its defective performance cannot serve as a defense to its claim for unpaid rent.[12] However, the cases Common-Camp relies on are distinguishable because they do not discuss the effect of article 1993 (or its predecessors, articles 1913 and 1914 of the

---

[10] (Rec. Doc. 1-2, at 11).
[11] (Rec. Doc. 4-1, at 4-12).
[12] (Rec. Doc. 29, at 3).

5

1870 Code). *See, e.g., Bd. of Comm'rs v. Turner Marine Bulk, Inc.*, 629 So. 2d 1278 (La. App. 4 Cir. 1993).

"Prior to the nonpayment of rent at issue, [lessor] had acknowledged its delinquency in maintaining the leased premises because of the water problem, an active breach of the lease by the lessor. Article 1993 therefore allows no performance by the lessee while the lessor was in default." *KM, Inc. v. Weil Cleaners, Inc.*, No. 50,209, p. 11 (La. App. 2 Cir. 1/13/16); 185 So. 3d 112, 119 (Caraway, J., concurring). Because Common-Camp's performance was defective and it failed to remedy the issue, it may not now put Tales in default. *See* LA. CIV. CODE art. 1993.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Common-Camp's *Motion for Partial Judgment on the Pleadings* **(Rec. Doc. 16)** is **DENIED**.

New Orleans, Louisiana this 29th day of August, 2019.

_____
CARL J. BARBIER
UNITED STATES DISTRICT JUDGE