UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| TALES IP, LLC | CIVIL ACTION |
| VERSUS | No.: 19-11339 |
| COMMON-CAMP, LLC | SECTION: "J" (4) |

## ORDER & REASONS

Before the Court are a *Motion for Reconsideration* **(Rec. Doc. 36)** filed by Defendant and Plaintiff-in-Counterclaim Common-Camp, LLC ("Common-Camp"), which seeks reconsideration of the Court's Order & Reasons denying its motion for judgment on the pleadings on its counterclaims (Rec. Doc. 31), and an *Alternative Motion to Certify Questions under 28 U.S.C. § 1292(b)* **(Rec. Doc. 38)**. Having considered the motion and memoranda, the record, and the applicable law, the Court finds that Common-Camp's motions should be **DENIED**.

## FACTS AND PROCEDURAL BACKGROUND

This litigation arises out of a lease dispute between Tales IP, LLC ("Tales"), as lessee, and Common-Camp, as lessor, for the property at 129-133 Camp Street, New Orleans, Louisiana (the "Property").[1] Effective January 1, 2019, Tales assumed the lease from the prior tenant under an amended lease. The amended lease contained a non-abatement clause, which provides: "The monthly rent shall be paid with no

---

[1] As Defendant has moved for judgment on the pleadings, all facts herein are taken from Plaintiff's pleadings and accepted as true. *See Jebaco, Inc. v. Harrah's Operating Co.*, 587 F.3d 314, 318 (5th Cir. 2009).

previous demand therefore and without any delay, defense, set-off, abatement or deduction, suspension or counterclaim whatsoever."[2]

For purposes of the instant motion, Common-Camp acknowledges that the Court may assume it breached its obligation to deliver the Property in a condition suitable for Tales's intended use and that the Property is in need of repair.[3] Tales paid rent through March 2019, but after Common-Camp refused to work with Tales in good faith to make the necessary repairs, Tales withheld rent for April and May 2019. On May 31, 2019, Common-Camp sent Tales a letter notifying Tales that it was terminating the lease because of Tales's failure to pay rent and that if Tales did not vacate the Property within five business days, Common-Camp would initiate eviction proceedings.

On June 6, 2019, Tales initiated this action in state court and sought an ex parte order allowing it to deposit the unpaid rent for April, May, and June 2019 as well as future rent into the court's registry, which the state court granted.[4] Common-Camp removed the case to this Court and then filed counterclaims against Tales and its guarantor under the lease, seeking unpaid rent and damages as provided in the lease as well as to evict Tales from the Property. After the Court denied Common-Camp's motion for judgment on the pleadings on its counterclaims and allowed Tales to deposit the rents in this Court's registry, Common-Camp filed the instant motion

---

[2] (Rec. Doc. 4-1, at 14).
[3] (Rec. Doc. 36-1, at 11-12).
[4] (Rec. Doc. 1-3, at 9).

for reconsideration and an alternative motion to certify the Court's interlocutory order for appeal.

## LEGAL STANDARD

Where a party seeks reconsideration of an interlocutory order, Federal Rule of Civil Procedure 54(b) controls. *Austin v. Kroger Texas, L.P.*, 864 F.3d 326, 336 (5th Cir. 2017). Rule 54(b) allows the Court "'to reconsider and reverse its decision for any reason it deems sufficient, even in the absence of new evidence or an intervening change in or clarification of the substantive law.'" *Id.* (citation omitted). Rule 54(b) is "less stringent" than Rule 59(e) and reflects a more flexible approach to the presentation of new arguments. *Id.* at 336-37.

When examining matters of state law, the Court will employ the principles of interpretation used by the state's highest court. *Am. Int'l Specialty Lines Ins. Co. v. Rentech Steel LLC*, 620 F.3d 558, 564 (5th Cir. 2010). Mindful of Louisiana's distinction between primary and secondary sources of law, the Court will begin its analysis with reliance on the Louisiana Constitution and statutes before looking to "'jurisprudence, doctrine, conventional usages, and equity, [which] may guide the court in reaching a decision in the absence of legislation and custom.'" *Shaw Constructors v. ICF Kaiser Eng'rs, Inc.*, 395 F.3d 533, 546 (5th Cir. 2004) (quoting La. C.C. art. 1 rev. cmt. b). If the Court must make an "Erie guess" on an issue of Louisiana law, the Court will decide the issue the way that it believes the Supreme Court of Louisiana would decide it. *Id.* The Court is not strictly bound by the decisions of the state intermediate courts and will disregard them if the Court is "convinced

that the Louisiana Supreme Court would decide otherwise." *In re Katrina Canal Breaches Litig.*, 496 F.3d 191, 206 (5th Cir. 2007).

## DISCUSSION

In its prior order, the Court held that Common-Camp could not put Tales in default because it failed to deliver the Property in a condition suitable for Tales's intended use, relying on Civil Code article 1993.[5] Common-Camp first contends that article 1993 is inapplicable in the current context because the more specific provisions of Title IX ("Lease") are controlling.

Article 2669 provides: "In all matters not provided for in this Title, the contract of lease is governed by the rules of the Titles of 'Obligations in General' and 'Conventional Obligations or Contracts.'" La. C.C. art. 2669. Thus, article 1993 may apply only if the articles on leases do not resolve the issue. *See id.* rev. cmt b. Because there are particular rules for leases that govern the instant dispute, as explained below, the Court agrees that its prior holding was in error.

Common-Camp further argues that the non-abatement clause in the lease prevents Tales from withholding rent, even if Common-Camp is in breach of the lease, regardless of the default provisions of the Civil Code. "The Civil Code . . . while defining and governing the relationship of the parties to a lease, still leaves the parties free to contractually agree to alter or deviate from all but the most fundamental provisions of the Code which govern their lease relationship." *Carriere v. Bank of La.*, 95-3058, p. 13 (La. 12/13/96), 702 So. 2d 648, 666. "In other words, the

---

[5] (Rec. Doc. 31, at 6).

4

lease contract itself is the law between the parties; it defines their respective rights and obligations so long as the agreement does not affect the rights of others and is not contrary to the public good." *Id.* (citing La. C.C. art. 1983).

Tales contends that the non-abatement clause is not enforceable in light of article 2715. Article 2715 provides that a lessee may obtain either a diminution of rent or dissolution of the lease, depending on the circumstances, if the use of the leased property is substantially impaired and may demand damages if the lessor was at fault. La. C.C. art. 2715; *see 727 Toulouse, LLC v. Bistro at the Maison De Ville, LLC*, 2012-1014, p. 17 (La. App. 4 Cir. 8/21/13), 122 So. 3d 1152, 1162.

In *727 Toulouse*, the lessee sought an injunction preventing the lessor from evicting it after it had failed to pay the rent but before the lessor had sent it an eviction notice, arguing that the lessor's removal of the air conditioning units substantially impaired the leased premises and gave it a right to a total abatement of rent under article 2715. *Id.* at 3-4, 122 So. 3d at 1155. The court held that article 2715 did not allow the lessee to refuse to pay rent while also refusing to surrender possession of the premises. *Id.* at 17, 122 So. 3d at 1162-63. The court explained that the lessee could seek a diminution of rent or dissolution of the lease either by agreement of the parties or by court order, but unilaterally refusing to pay rent and remaining in occupancy of the premises was "an improper 'self-help' remedy." *Id.* However, this case is distinguishable from *727 Toulouse* in that Tales has deposited the contested rents in the Court's registry.

5

In its original motion, Tales also relied on article 2684, which requires a lessor "to deliver the thing at the agreed time and in good condition suitable for the purpose for which it was leased." La. C.C. art. 2684. In *Moity v. Guillory*, 430 So. 2d 1243, 1245 (La. App. 1 Cir. 1983), the lessor failed to deliver the premises in a condition suitable for its intended purpose but provided workers in an attempt to repair the defects, even though the lease provided that the lessee was responsible for major repairs. After seven months, some repairs had been made but serious defects remained, so the lessee terminated the lease before its term expired and vacated the premises. *Id.* at 1245-46. The lessor then filed suit seeking, inter alia, unpaid rents for the remaining five months of the one-year term. *Id.* at 1247 & n.5. The court first held that the lessee had not waived the implied warranty of fitness by remaining in possession because both the lessee and the lessor made attempts to repair the defects during this period and the lessee only left after these efforts failed. *Id.* at 1247. The court then held that the lessee was entitled to terminate the lease due to the lessor's breach and therefore was not liable for rent for the five months remaining on the lease term. *Id.* However, there was no indication that the lessee withheld or refused to pay rent while in possession. *See id.* at 1244-46.

The non-abatement clause provides: "The monthly rent shall be paid with no previous demand therefore and without any delay, defense, set-off, abatement or deduction, suspension or counterclaim whatsoever."[6] Common-Camp argues that,

---

[6] (Rec. Doc. 4-1, at 14).

pursuant to this clause, Tales's failure to pay rent when due entitles Common-Camp to terminate the lease, evict Tales, and collect damages as provided by the lease.

However, Common-Camp's right to terminate the lease and evict Tales is subject to the equitable doctrine of judicial control. *See, e.g.*, *Carriere*, 702 So. 2d at 654. "[C]ancellation of a lease is not favored in Louisiana." *Id.* Therefore, "'Louisiana courts are vested with discretion under certain circumstances to decline to grant a lessor cancellation of a lease although such right appears to be available to him.'" *Id.* (quoting *Ergon, Inc. v. Allen*, 593 So. 2d 438, 440 (La. App. 2 Cir. 1992)). "Cases which have applied judicial control of leases generally involve circumstances where a lessee has made a good faith error and acted reasonably to correct it." *Ergon*, 593 So. 2d at 440. The Louisiana Supreme Court has held that judicial control may apply where the lessee failed to timely pay rent, *see Edwards v. Standard Oil Co. of La.*, 144 So. 430, 431 (La. 1932), and where the lessee failed to pay the entire amount due because it disputed the proper amount, *see Rudnick v. Union Producing Co.*, 25 So. 2d 906, 908 (La. 1946); *Brewer v. Forest Gravel Co.*, 135 So. 372, 373 (La. 1931). As explained in *Brewer*:

> In the present case defendant has not refused arbitrarily to pay the rent, but was in good faith in refusing to pay more than he thought was due according to the advice of his counsel. We do not think a lease should be canceled under such circumstances. Thus, where a lessor refuses or neglects to make certain repairs the tenant may make them at his own expense and deduct them from the rent. [La. C.C.] art. 2694. But this right would be valueless if the tenant could do so only at his own risk and peril if it should later develop that he was in error as to the necessity for or the value of such repairs. When the tenant has reasonable grounds for thinking that he does not owe all the rent claimed by the landlord, it would be a harsh rule to turn him out because he has made some error

7

> in good faith; and, as above said, courts will exercise some discretion in such cases.

*Brewer*, 135 So. at 373; *see also Chastant v. Headrick Outdoor Inc.*, 81 F.3d 31, 34 (5th Cir. 1996) (citing *Plunkett v. D. & L. Family Pharmacy, Inc.*, 562 So. 2d 1048 (La. App. 3 Cir. 1990); *KPW Assocs. v. S.S. Kresge Co.*, 535 So. 2d 1173 (La. App. 2 Cir. 1988)) ("[A] court may decline to grant cancellation of a lease to the lessor where the lessee justifiably retained a portion of the rent because the lessor had failed to make required repairs.").

In *Brewer*, the lessor sought cancellation of the lease because the lessee withheld part of the rent on a gravel lease to pay severance tax. 135 So. at 372. The lessor contended that the severance taxes were owed solely by the lessee. *Id*. The Louisiana Supreme Court held that the tax was owed by the lessee but refused to cancel the lease because of non-payment of the portion of the rent withheld by the lessee to pay the tax, noting that the lessee did not arbitrarily refuse to pay the rent but made an error in good faith by refusing to pay more than he believed was due from him. *Id*. at 373.

Common-Camp contends that, under Louisiana law, Tales had two options available to it—either pay for necessary repairs and deduct the cost from the rent, or vacate the Property and seek dissolution of the lease—but because Tales chose a third option (withholding rent), it breached the lease, entitling Common-Camp to terminate the lease and evict Tales. This argument fails to acknowledge that Tales has deposited the withheld rent payments in the Court's registry. Consider, instead, if Tales had not merely withheld rent but spent the rent payments on repairs (which

8

Common-Camp acknowledges is permissible). Had Common-Camp disputed the necessity of the repairs or the reasonableness of the cost and brought suit to evict Tales, the court would need to consider the propriety of the repairs in order to determine whether Common-Camp was entitled to a judgment of eviction; this is the exact situation that *Brewer* advises is appropriate for judicial control.

Perhaps recognizing the precarity of making repairs when the lessor disputes their necessity, Tales took the precaution of depositing the rent payments in the Court's registry pending the resolution of its claims. This is not the same as merely withholding rent. If the Court determines that Tales's claims lack merit, Common-Camp will receive the rent payments deposited with the Court; Tales has deposited all payments due thus far. However, Common-Camp now seeks to exploit Tales's precaution by rushing the Court to judgment on its claims before Tales's claims can even be considered.

While Tales was initially in error by withholding rent, it believed in good faith that it was entitled to a diminution in rent given Common-Camp's failure to deliver the Property in a condition fit for its intended use.[7] Further, Tales acted promptly to correct its mistake by seeking judicial intervention within days of receiving Common-Camp's notice of default and obtaining leave from the state court to deposit the late rent payments in the court's registry. The Court finds that these circumstances warrant the exercise of judicial control. *See Chastant*, 81 F.3d at 34; *Rudnick*, 25 So.

---

[7] Although the lease contains a provision stating that the Property is "accepted by LESSEE in [its] present condition" (Rec. Doc. 4-1, at 5), the Court determined in its prior Order & Reasons that this waiver was not effective as to Tales under article 2699 (Rec. Doc. 31, at 5).

9

2d at 908; *Brewer*, 135 So. at 373; *Ergon*, 593 So. 2d at 440. Therefore, the Court declines to grant Common-Camp a termination of the lease or damages provided by the lease.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Common-Camp's *Motion for Reconsideration* **(Rec. Doc. 36)** is **DENIED**.

**IT IS FURTHER ORDERED** that Common-Camp's *Alternative Motion to Certify Questions under 28 U.S.C. § 1292(b)* **(Rec. Doc. 38)** is **DENIED AS MOOT**.

New Orleans, Louisiana this 6th day of November, 2019.

_____
CARL J. BARBIER
UNITED STATES DISTRICT JUDGE